IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

—————————————————————

UNITED STATES OF AMERICA

     -v-

RENEE M. THOMPSON,

            Defendant.

—————————————————————

FILED BY____SM____D.C.

Sep 16, 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FTL

25-MJ-623

FLSD Case Number: 25-mj-6531-JMS

## GOVERNMENT'S MOTION TO SEAL

**THE UNITED STATES OF AMERICA**, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Meghan K. McGuire, Assistant United States Attorney, of counsel, hereby moves the Court for an Order permitting the filing of this motion, the above-referenced criminal complaint and associated documents, including the affidavit, under seal.   The government requests the Court seal the documents for 60 days due to the sensitive law enforcement information therein.

Dated:   Rochester, New York, September 1, 2025

                                      MICHAEL DiGIACOMO
                                      United States Attorney
                                      Western District of New York

                                      s/*Meghan K. McGuire*
BY:    MEGHAN K. McGUIRE
                                      Assistant U.S. Attorney
                                      100 State Street, Suite 500
                                      Rochester, New York 14614
                                      585-399-3922
                                      Meghan.McGuire@usdoj.gov

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

UNITED STATES OF AMERICA

        -v-                                          25-MJ-623

RENEE M. THOMPSON,

                          Defendant.
_____

## ORDER GRANTING GOVERNMENT'S MOTION TO SEAL

Upon the motion of the United States of America, by and through its attorney, Michael DiGiacomo, United States Attorney for the Western District of New York, and Meghan K. McGuire, Assistant United States Attorney, of counsel, for an Order permitting the filing of a criminal complaint and associated documents under seal, and after due consideration,

IT IS HEREBY ORDERED, that the criminal complaint and associated documents of the United States is hereby permitted to be filed under seal for 60 days.

DATED:     Rochester, New York, September 9, 2025.

_____
HON. MARK W. PEDERSEN
United States Magistrate Judge

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the

Western District of New York

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No. 25-MJ-623 |
| RENEE M. THOMPSON | ) |
| | ) |
| | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of _____ **7/24/23-5/14/25** _____ in the county of _____ **Steuben** _____ in the

_____ **Western** _____ District of _____ **NY, and elsewhere** _____, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. §§ 1344 and 1349 | Bank Fraud and Conspiracy to Commit Bank Fraud |
| 18 U.S.C. §§ 1956(a)(1)(B)(i), 1956 | Money Laundering and Conspiracy to Commit Money Laundering |
| (h), and 1957 | |

This criminal complaint is based on these facts:

See attached Affidavit of FBI Special Agent ("SA") Francis X. DeLuke, which is incorporated herein by reference

☑ Continued on the attached sheet.

_Francis X. DeLuke_

*Complainant's signature*

Francis X. DeLuke, SA, FBI

*Printed name and title*

submitted electronically by email in .pdf format. Oath administered, and contents and signature attested to me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 41(d)(3).

Date: ___ September 9, 2025 ___

_Mark Pedersen_

*Judge's signature*

City and state: _____ Rochester, New York _____     Hon. Mark W. Pedersen, US Magistrate Judge

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

STATE OF NEW YORK   )
COUNTY OF MONROE   )     ss:
CITY OF ROCHESTER   )

     I, FRANCIS XAVIER DELUKE, being duly sworn, depose and state:

## INTRODUCTION AND AGENT BACKGROUND

     1.     I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been since December 2021.  I am currently assigned to the Corning, New York, Resident Agency.  As a special agent of the FBI, I am an investigative or law enforcement officer of the United States, authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.  As an investigative or law enforcement officer of the United States, I am also authorized to conduct investigations of and to make arrests for violations of federal criminal statutes.

     2.     This affidavit is submitted in support of an application for a complaint charging RENEE M. THOMPSON ("THOMPSON") with violations of 18 U.S.C. §§ 1344 and 1349 (Bank Fraud and Conspiracy to Commit Bank Fraud) and 1956(a)(1)(B)(i), 1956(h), and 1957 (Money Laundering and Conspiracy to Commit Money Laundering) (hereinafter, collectively the "TARGET OFFENSES").

     3.     This affidavit is based on my investigation and on information provided to me by members of the law enforcement community.

1

4.      Because this affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning the investigation.  Instead, I have set forth only the facts which I believe are sufficient to establish probable cause to believe that THOMPSON committed the TARGET OFFENSES.

**PROBABLE CAUSE**

5.      On or around August 15, 2023, a Security Officer with a particular bank (hereinafter "Bank 1") contacted the FBI to report a fraudulent scheme involving counterfeit checks.

6.      According to the Bank 1 Security Officer, between on or about July 24, 2023, and on or about August 15, 2023, one of Bank 1's customers (hereinafter "Victim Company 1") had the following 17 counterfeit checks drawn on its account:

| Date of Deposit | Check Number | Amount | Payee |
|---|---|---|---|
| 7/13/2023 | 2388 | $   12,914.11 | Renee Thompson |
| 7/24/2023 | 3879 | $    8,324.05 | Renee Thompson |
| 7/25/2023 | 3897 | $    9,927.71 | Renee Thompson |
| 7/26/2023 | 3915 | $    9,920.15 | Renee Thompson |
| 7/27/2023 | 3950 | $    9,970.67 | Renee Thompson |
| 7/28/2023 | 3965 | $    9,910.40 | Renee Thompson |
| 7/31/2023 | 3989 | $   12,906.13 | Renee Thompson |
| 7/27/2023 | 3998 | $    9,903.07 | Renee Thompson |
| 8/3/2023 | 4022 | $    9,302.12 | Renee Thompson |
| 8/4/2023 | 4055 | $   12,345.86 | Renee Thompson |
| 8/7/2023 | 4071 | $   12,312.14 | Renee Thompson |
| 8/8/2023 | 4090 | $   12,606.84 | Renee Thompson |
| 8/9/2023 | 4097 | $   12,630.19 | Renee Thompson |
| 8/10/2023 | 4099 | $   12,650.44 | Renee Thompson |
| 8/11/2023 | 4100 | $   12,620.97 | Renee Thompson |
| 8/14/2023 | 4113 | $   12,610.86 | Renee Thompson |
| 8/14/2023 | 4771 | $   12,312.14 | Subject 1 |
| 8/15/2023 | 4150 | $   12,612.67 | Renee Thompson |

2

| | | | TOTAL: | $ 205,780.52 |
|---|---|---|---|---|

7.      Victim Company 1 is in the Western District of New York and has its business account at a Bank 1 branch located in the Western District of New York.

8.      All but one of the counterfeit checks were numbered out of sequence. However, one check was properly numbered #2388.

9.      Upon discovering the fraud, Victim Company 1 informed Bank 1 that, in or around April 2023, Victim Company 1 mailed a check numbered #2388 to a vendor in Florida.  The vendor never received the check.

10.     Check #2388 contained Victim Company 1's name, address, bank account number, routing number, and signature.  This information was subsequently used to create the 17 counterfeit checks that were ultimately withdrawn from Victim Company 1's account.

11.     Based on my training and experience involving mail fraud and money laundering schemes and my knowledge of this investigation, I respectfully submit that there is probable cause to believe that Victim Company 1's genuine check #2388 was stolen from the mail.

12.     Sixteen of the 17 counterfeit checks totaling approximately $180,855.71 were made payable to THOMPSON.

13.     All 16 counterfeit checks that were written to THOMPSON were deposited at Bank 2.

*Background Regarding THOMPSON*

14.     On or about December 11, 2000, THOMPSON was convicted of bank embezzlement, in violation of 18 U.S.C. § 656, in the United States District Court, Southern District of Florida.   THOMPSON had been employed as a bank teller and, during her employment, stole a Cashier's check and made it payable to herself for $9,500.00. THOMPSON was sentenced to six months' imprisonment followed by five years' supervised release and ordered to pay $9,500 in restitution.

15.     At all times relevant to this investigation, THOMPSON was a dispatcher for United Parcel Service ("UPS").

*THOMPSON Launders the Fraudulent Proceeds*

16.     Bank 2's records confirmed that the 16 counterfeit checks written to THOMPSON were deposited into personal checking account X1224 in the name of "Renee Thompson."  The 16 counterfeit checks were deposited at various Bank 2 branches in Florida.

17.     Bank 2's records also showed that, in or around July and August 2023, THOMPSON dispersed the proceeds of the 16 counterfeit checks (hereinafter the "Fraudulent Proceeds") as follows:

| | |
|---|---|
| Purchased money orders from Publix Supermarkets | $ 30,506 |
| Purchased money orders from the United States Post Office | $ 35,108 |
| Cash withdrawals from ATMs | $ 38,943 |
| Apple Peer2Peer transactions | $ 18,703 |
| Apple Cash Replenishment | $ 26,012 |
| Peer2Peer transactions with Cash App | $ 11,770 |
| Cash advance purchases | $ 31,000 |
| **TOTAL** | **$192,042** |

*THOMPSON uses the Fraudulent Proceeds to Purchase 65 Money Orders from Publix Supermarkets in Just Two Weeks*

18.     Bank 2's records showed THOMPSON used the Fraudulent Proceeds to purchase the following money orders at various Publix locations in Florida:

| Date | Store Location | Money Order Value |
|------|---------------|------------------|
| 7/21/2023 | Boca Raton, FL | $   2,003.96 |
| 7/24/2023 | Boca Raton, FL | $   4,007.92 |
| 7/24/2023 | Coral Springs, FL | $   2,504.95 |
| 7/24/2023 | Coconut Creek, FL | $   2,003.96 |
| 7/26/2023 | Boca Raton, FL | $   2,805.94 |
| 7/26/2023 | Boca Raton, FL | $   2,191.95 |
| 7/27/2023 | Plantation, FL | $   2,905.94 |
| 7/27/2023 | Plantation, FL | $   2,089.95 |
| 7/28/2023 | Deerfield Beach, FL | $   2,905.94 |
| 7/28/2023 | Deerfield Beach, FL | $   2,089.95 |
| 7/31/2023 | Boca Raton, FL | $   2,905.94 |
| 7/31/2023 | Boca Raton, FL | $   2,089.95 |
|  | **TOTAL** | **$   30,506.35** |

19.     Records obtained from Publix confirmed each of these purchases was made by an individual named "Renee Thompson."   The purchaser used THOMPSON's correct address, date of birth, social security number, phone number, and Driver's License ID# when making the purchases.

20.     Publix's records also provided greater detail about each purchase, including that fact that THOMPSON was purchasing multiple, $500 money orders during each transaction, as shown below:

| Date | Face Amount | Fee | Total Amount |
|------|-------------|-----|--------------|
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |

5

| | | | |
|---|---|---|---|
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 85 | 1 | 85.99 |
| | | | **2089.95** |

| Date | Face Amount | Fee | Total Amount |
|---|---|---|---|
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 500 | 1 | 500.99 |
| 2023-07-29 | 400 | 1 | 400.99 |
| | | | **2905.94** |

| Date | Face Amount | Fee | Total Amount |
|---|---|---|---|
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 85 | 1 | 85.99 |
| | | | **2089.95** |

| Date | Face Amount | Fee | Total Amount |
|---|---|---|---|
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 500 | 1 | 500.99 |
| 2023-07-28 | 400 | 1 | 400.99 |
| | | | **2905.94** |

| Date | Face Amount | Fee | Total Amount |
|---|---|---|---|
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 85 | 1 | 85.99 |
| | | | **2089.95** |

| Date | Face Amount | Fee | Total Amount |
|---|---|---|---|
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 500 | 1 | 500.99 |

6

| 2023-07-27 | 500 | 1 | 500.99 |
|---|---|---|---|
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 500 | 1 | 500.99 |
| 2023-07-27 | 400 | 1 | 400.99 |
| | | | **2905.94** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 187 | 1 | 187.99 |
| | | | **2191.95** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 500 | 1 | 500.99 |
| 2023-07-26 | 300 | 1 | 300.99 |
| | | | **2805.94** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| | | | **2003.96** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| 2023-07-23 | 500 | 1 | 500.99 |
| | | | **2504.95** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-22 | 500 | 1 | 500.99 |
| 2023-07-22 | 500 | 1 | 500.99 |

| 2023-07-22 | 500 | 1 | 500.99 |
|---|---|---|---|
| 2023-07-22 | 500 | 1 | 500.99 |
| 2023-07-22 | 500 | 1 | 500.99 |
| 2023-07-22 | 500 | 1 | 500.99 |
| 2023-07-22 | 500 | 1 | 500.99 |
| 2023-07-22 | 500 | 1 | 500.99 |
| | | | **4007.92** |

| **Date** | **Face Amount** | **Fee** | **Total Amount** |
|---|---|---|---|
| 2023-07-21 | 500 | 1 | 500.99 |
| 2023-07-21 | 500 | 1 | 500.99 |
| 2023-07-21 | 500 | 1 | 500.99 |
| 2023-07-21 | 500 | 1 | 500.99 |
| | | | **2003.96** |

***THOMPSON uses the Fraudulent Proceeds to Purchase Money Orders from USPS***

21.    Records obtained from the United States Postal Office similarly confirmed that, beginning on or about August 1, 2023, through on or about August 12, 2023, THOMPSON purchased 37 postal money orders totaling approximately $35,108.40 (fees included) from nine different Post Offices in the Florida area.

***THOMPSON withdraws the Fraudulent Proceeds in Cash***

22.    Bank 2's records also show that, between on or about July 21, 2023, and on or about August 15, 2023, THOMPSON made 52 cash withdrawals of the Fraudulent Proceeds from nine different ATMs in the Florida area.

***THOMPSON Transfers the Fraudulent Proceeds to her Apple Cash Account***

23.    Bank 2's records showed that THOMPSON used Apple Pay to transfer the Fraudulent Proceeds to third parties and add money to her Apple Pay account.

24.     Records obtained from Apple confirmed that an account registered to THOMPSON received the Fraudulent Proceeds and then immediately cashed out, as follows:

| Date | Transaction Type | Amount |
|---|---|---|
| 2023-07-26 11:53:27.717 | TopUp | $ 200.00 |
| 2023-07-26 15:02:45.76 | Instant Cash Out | $ (200.21) |
| 2023-07-26 15:04:03.117 | Instant Cash Out | $ (2,899.00) |
| 2023-07-27 08:53:52.603 | TopUp | $ 1,900.00 |
| 2023-07-27 08:57:13.913 | TopUp | $ 85.00 |
| 2023-07-27 11:13:22.513 | Instant Cash Out | $ (1,785.00) |
| 2023-07-28 07:38:32.70 | TopUp | $ 1,900.00 |
| 2023-07-28 07:40:14.37 | Instant Cash Out | $ (1,901.00) |
| 2023-07-29 09:06:12.64 | TopUp | $ 1,900.00 |
| 2023-07-29 09:07:09.617 | Instant Cash Out | $ (1,900.00) |
| 2023-07-30 05:01:01.587 | TopUp | $ 500.00 |
| 2023-07-30 06:26:19.217 | Instant Cash Out | $ (490.01) |
| 2023-07-30 12:41:05.777 | TopUp | $ 1,525.00 |
| 2023-07-30 12:41:50.837 | Instant Cash Out | $ (1,525.00) |
| 2023-08-01 07:36:37.653 | TopUp | $ 842.09 |
| 2023-08-01 08:45:19.853 | TopUp | $ 990.00 |
| 2023-08-01 09:19:48.467 | Instant Cash Out | $ (1,832.09) |
| 2023-08-02 07:25:24.82 | TopUp | $ 100.00 |
| 2023-08-02 07:29:18.473 | Instant Cash Out | $ (100.00) |
| 2023-08-03 03:22:31.497 | TopUp | $ 100.00 |
| 2023-08-03 08:11:12.657 | Instant Cash Out | $ (75.05) |
| 2023-08-03 11:47:23.15 | Instant Cash Out | $ (1,403.00) |
| 2023-08-04 09:00:17.74 | TopUp | $ 1,500.00 |
| 2023-08-04 09:45:29.01 | Instant Cash Out | $ (1,500.00) |
| 2023-08-05 09:24:21.973 | TopUp | $ 1,490.00 |
| 2023-08-05 09:25:21.753 | Instant Cash Out | $ (1,490.00) |
| 2023-08-06 04:13:53.87 | TopUp | $ 2,000.00 |
| 2023-08-06 04:14:33.127 | Instant Cash Out | $ (2,000.00) |
| 2023-08-06 17:16:49.60 | Instant Cash Out | $ (515.00) |
| 2023-08-07 08:03:45.137 | TopUp | $ 2,010.00 |
| 2023-08-07 08:04:23.34 | Instant Cash Out | $ (2,010.00) |
| 2023-08-07 08:07:36.467 | TopUp | $ 400.00 |
| 2023-08-07 08:08:20.99 | Instant Cash Out | $ (400.00) |
| 2023-08-08 10:29:16.09 | TopUp | $ 1,270.00 |
| 2023-08-08 10:38:08.547 | Instant Cash Out | $ (1,270.00) |
| 2023-08-09 09:48:26.40 | Instant Cash Out | $ (1,500.00) |

| | | |
|---|---|---|
| 2023-08-10 06:06:56.63 | TopUp | $ 800.00 |
| 2023-08-10 06:43:40.193 | Instant Cash Out | $ (500.00) |
| 2023-08-10 06:44:48.35 | Instant Cash Out | $ (300.00) |
| 2023-08-10 10:50:33.687 | Instant Cash Out | $ (2,000.00) |
| 2023-08-11 08:53:34.54 | Instant Cash Out | $ (3,000.00) |
| 2023-08-13 03:00:49.893 | TopUp | $ 1,500.00 |
| 2023-08-14 11:25:55.243 | Instant Cash Out | $ (1,500.00) |
| 2023-08-15 03:14:57.333 | TopUp | $ 3,500.00 |
| 2023-08-15 04:10:44.107 | TopUp | $ 1,500.00 |
| 2023-08-15 09:47:30.627 | Instant Cash Out | $ (5,000.00) |
| | **TOTAL IN:** | **$ 26,012.09** |

25.     With respect to the peer-to-peer transfers, Apple's records showed the following:

| Date | Transaction Type | Recipient | Amount |
|---|---|---|---|
| 2023-08-02 | Split Transfer | Subject 4 | $ (4,402.00) |
| 2023-08-03 | P2P Express | Subject 5 | $ (4,800.00) |
| 2023-08-04 | P2P Express | Subject 6 | $ (1.00) |
| 2023-08-09 | P2P Express | Subject 5 | $ (1,500.00) |
| 2023-08-09 | P2P Express | Subject 7 | $ (1,500.00) |
| 2023-08-10 | P2P Express | Subject 7 | $ (2,000.00) |
| 2023-08-11 | P2P Express | Subject 7 | $ (3,500.00) |
| 2023-08-11 | P2P Express | Subject 5 | $ (1,000.00) |
| | | **TOTAL** | **$ (19,698.00)** |

***THOMPSON Transfers the Fraudulent Proceeds to Herself and Co-Conspirators via Cash App***

26.     According to Bank 2's records, THOMPSON also made Cash App transfers using the Fraudulent Proceeds.

27.     Records obtained from Cash App confirmed that an account registered to THOMPSON transferred the Fraudulent Proceeds to herself and her co-conspirators, as follows:

| Date | Amount | Recipient |
|------|--------|-----------|
| 7/24/2023 | $ 500.00 | Renee Thompson |
| 7/24/2023 | $ 500.00 | Renee Thompson |
| 7/24/2023 | $ 500.00 | Renee Thompson |
| 7/24/2023 | $ 500.00 | Renee Thompson |
| 7/24/2023 | $ 500.00 | Renee Thompson |
| 7/26/2023 | $   10.00 | Subject 2 |
| 7/27/2023 | $ 500.00 | Subject 2 |
| 7/27/2023 | $ 500.00 | Subject 2 |
| 7/27/2023 | $ 500.00 | Subject 2 |
| 7/27/2023 | $ 500.00 | Subject 2 |
| 8/2/2023 | $   1,000.00 | Renee Thompson |
| 8/2/2023 | $   1,000.00 | Renee Thompson |
| 8/3/2023 | $   1.00 | Renee Thompson |
| 8/7/2023 | $   1,500.00 | Subject 3 |
| 8/7/2023 | $   14.69 | Subject 3 |
| 8/7/2023 | $   5.25 | Subject 3 |
| 8/7/2023 | $   10.00 | Renee Thompson |
| 8/8/2023 | $ 100.00 | Renee Thompson |
| 8/10/2023 | $   1,900.00 | Subject 3 |
| 8/14/2023 | $   1,700.00 | Subject 3 |
|  |  |  |
| **TOTAL** | **$   11,740.94** |  |

***THOMPSON Makes Cash Advance Purchases with the Fraudulent Proceeds***

28.     Bank 2's records showed THOMPSON made cash advance purchases using $31,000 of the Fraudulent Proceeds on the following dates:

| Date | Amount |
|------|--------|
| 7/24/2023 | $   5,000.00 |
| 7/26/2023 | $   5,000.00 |

11

| 8/10/2023 | $    5,000.00 |
| 8/10/2023 | $    3,500.00 |
| 8/14/2023 | $    4,500.00 |
| 8/14/2023 | $    3,500.00 |
| 8/17/2023 | $    4,500.00 |
| **TOTAL** | **$ 31,000.00** |

29.     Bank 2 ultimately closed THOMPSON's accounts due to suspicious financial transactions.

***Additional Deposits of Counterfeit Checks by THOMPSON***

30.     During this investigation, the FBI discovered that THOMPSON had an account at another bank (hereinafter "Bank 3"), and that she deposited counterfeit checks into that bank account as well.

31.     Specifically, in or around June 2023, THOMPSON deposited two counterfeit checks from two victim companies (hereinafter "Victim Company 2" and "Victim Company 3") for a total of $7,098.  THOMPSON then dispersed the proceeds of the counterfeit checks as follows:

| Cash withdrawals from various Bank 3 ATM's | $ 1,180 |
| Purchased money orders from Walmart | $ 2,524.70 |
| **TOTAL** | **$ 3,704.70** |

32.     Following these disbursements, the counterfeit checks bounced.   This resulted in a $3,704 loss to Bank 3.

12

33.     Bank 3 subsequently closed THOMPSON's account due to suspicious financial transactions.

***Interview of THOMPSON and Service of Money Mule Letter***

34.     On or about October 21, 2024, FBI agents interviewed THOMPSON.

35.     During the interview, THOMPSON confirmed that she was working at the United Parcel Service (UPS) as a dispatcher and had been employed there for 20 years.

36.     THOMPSON confirmed that her personal identifying information was not stolen or compromised.

37.     THOMPSON claimed that she had never heard of either Bank 1 or Victim 1. She also denied that she had ever received any checks from either Bank 1 or Victim 1.

38.     THOMPSON admitted that she had previously banked at Bank 2 and Bank 3, but she claimed that both accounts were closed due to dormancy.

39.     At the close of this interview, the agents presented THOMPSON with a letter that is commonly referred to as a "money mule letter."

40.     The money mule letter stated the following:

**U.S. Department of Justice**
**Federal Bureau of Investigation**



## HAND-DELIVERED

Renee Thompson:

The Federal Bureau of Investigation, Buffalo Division, is providing warning that you, and/or persons you associate with, may be engaged in fraudulent activity that violates state and/or federal criminal laws. Specifically, your recent transmission or receipt of money via wire transfer, the mail, money service business (such as Western Union or MoneyGram) and/or the shipment of goods may have facilitated the transfer of money from the victims of a crime, to the perpetrators of a fraudulent scheme.

Some fraudulent schemes involve criminals who falsely represent themselves as someone else, in order to trick victims into sending money via wire transfer to an identified pre-determined account (e.g. your bank account). The criminal may ask the account holders, such as yourself, to "process payments", "transfer funds", or "re-ship products" to facilitate the movement of money obtained through fraud from victims to the criminals. These requests may be masqueraded as work from home, secret shopper opportunities, or an online romance.

**Under certain circumstances, knowingly engaging in a financial transaction that involves funds derived from illegal activity may violate the federal money laundering laws, even if you had no involvement in the underlying criminal activity.** Under certain circumstances, you may also have a legal obligation to inquire about the source of the funds and may not avoid legal responsibility by being willfully blind to the source of funds. A knowing and intentional violation of the money laundering laws may result in criminal prosecution and the seizure of property that is found to be tainted by illegal funds. By agreeing to engage in such transactions, you may be also be facilitating a fraudulent scheme and assisting the perpetrators of the scheme. If you wish to discuss this letter and the contents of this letter further, please contact the agent who served you this letter or your local FBI field office. The nearest FBI office can also be located online at www.fbi.gov.

The FBI has documented the delivery of this letter to you. Along with this letter, the FBI has also explained to you the precise financial transaction(s) in which you engaged that may have involved illegal funds. Receipt of this letter will be taken into consideration, should you continue to be involved in the type of activities described above.

I signed this letter voluntarily  _RT_  (Initials)          Date:  _10|21|202Y_

Recipient Name:  _Renee Thompson_  (Printed)

_(signature)_  (Signature)

41.   THOMPSON read the letter and signed it in the presence of an FBI agent.

14

***THOMPSON Continues to Act as a Money Mule after Receiving the Warning Letter***

42.     Following the October 2024 interview, the FBI received a report from yet another bank (hereinafter "Bank 4") that THOMPSON was continuing to make structured cash deposits into an account at Bank 4, even after she received and signed a warning from the FBI.

43.     According to records obtained from Bank 4, between on or about November 1, 2024, and on or about December 15, 2024, THOMPSON made 27 ATM deposits into her Bank 4 account, as follows:

| Date | Deposit Amount |
|---|---|
| 11/4/2024 | $1,000.00 |
| 11/4/2024 | $1,000.00 |
| 11/4/2024 | $1,000.00 |
| 11/12/2024 | $480.00 |
| 11/12/2024 | $1,000.00 |
| 11/12/2024 | $1,000.00 |
| 11/20/2024 | $900.00 |
| 11/20/2024 | $980.00 |
| 11/20/2024 | $1,000.00 |
| 11/20/2024 | $1,000.00 |
| 11/25/2024 | $320.00 |
| 11/25/2024 | $980.00 |
| 11/25/2024 | $980.00 |
| 11/25/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/3/2024 | $1,000.00 |
| 12/11/2024 | $809.00 |
| 12/11/2024 | $900.00 |
| 12/11/2024 | $1,000.00 |

| 12/11/2024 | $1,000.00 |
|:---:|:---|
| 12/11/2024 | $1,000.00 |
| **TOTAL** | **$25,349.00** |

44.     The FBI obtained security footage from various Bank 4 branches.  The security footage showed THOMPSON depositing cash. The security footage also showed THOMPSON holding her cell phone during the transactions.

45.     As recently as May 14, 2025, THOMPSON continued to structure payments in her Bank 4 account by making multiple deposits a day and then transferring the money through peer2peer platforms, withdrawing the money as cash, and making retail purchases.

### CONCLUSION

46.     Based on the foregoing, I respectfully submit that there is probable cause to believe that THOMPSON committed the TARGET OFFENSES.

FRANCIS XAVIER DELUKE
Special Agent
Federal Bureau of Investigation

Affidavit submitted electronically by email in .pdf format.  Oath administered and contents and signature attested to me and before me as true and accurate telephonically pursuant to Fed. R. Crim. P. 4.1 and 4(d) on this 9th day of September 2025.

HON. MARK W. PEDERSEN
United States Magistrate Judge

16

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT

for the

Western District of New York

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.   25-MJ-623 |
| RENEE M. THOMPSON | ) | |
| | ) | |
| | ) | |
| | ) | |
| _Defendant_ | | |

## ARREST WARRANT

To:      Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay
_(name of person to be arrested)_    RENEE M. THOMPSON                                                                                                                ,
who is accused of an offense or violation based on the following document filed with the court:

❏ Indictment     ❏ Superseding Indictment     ❏ Information     ❏ Superseding Information     ☑ Complaint
❏ Probation Violation Petition     ❏ Supervised Release Violation Petition     ❏ Violation Notice     ❏ Order of the Court

This offense is briefly described as follows:

There is probable cause to believe that RENEE M. THOMPSON has violated 18 U.S.C. §§ 1344 and 1349 (Bank Fraud and Conspiracy to Commit Bank Fraud) and 1956(a)(1)(B)(i), 1956(h), and 1957 (Money Laundering and Conspiracy to Commit Money Laundering)

Date:      09/09/2025

_Issuing officer's signature_

City and state:      Rochester, New York                    Hon. Mark W. Pedersen, United States Magistrate Judge
_Printed name and title_

| Return |
|---|
| This warrant was received on _(date)_ _____ , and the person was arrested on _(date)_ _____ at _(city and state)_ _____ . |
| Date: _____      _____ |
| _Arresting officer's signature_ |
| _____ |
| _Printed name and title_ |